IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| CARL CHESTER | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 1:15cv259 |
| CHARLES DANIELS | § | |

MEMORANDUM OPINION AND ORDER

Petitioner Carl Chester, an inmate confined within the Bureau of Prisons ("BOP"), proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a prison disciplinary conviction.

The respondent has filed a motion to dismiss or, in the alternative, for summary judgment (doc. no. 12). As the respondent has presented information outside the pleadings, the filing will be considered as a motion for summary judgment. See FED.R.CIV.P. 12(d).

Factual Background

In 2014, Incident Report #2552954 was written charging petitioner with possessing a dangerous weapon in violation of BOP disciplinary code 104. After petitioner appeared before the Unit Disciplinary Committee ("UDC") on February 28, 2014, it was determined that the charges should be referred to a Discipline Hearing Officer ("DHO").

On April 10, 2014, a DHO conducted a hearing concerning the incident report. At the conclusion of the hearing, the DHO found petitioner guilty of the offense with which he was charged. The following punishment was assessed: (a) placement in disciplinary segregation for 20 days; (b) loss of telephone privileges for 180 days and (c) forfeiture of 41 days of good conduct time. The DHO explained his reasoning as follows:

> After considering all the facts, the DHO finds Chester did commit a prohibited act. And the code the DHO believes best describes this act [is] Possessing a Weapon, Code 104.

The DHO considered the following facts:

The statement Chester presented during the DHO hearing held on April 10, 2014.

Photograph dated February 25, 2014, taken by B. VanDenover, SIS Tech.

The initial investigation [in which] you made no comment.

An e-mail submitted by R. Villapudua from C. Lepe, dated April 4, 2014. The e-mail reads, "I spoke to inmate Chester with Mrs. Villapudua present about him continuously changing [his] story and/or his staff rep. I explained to him that we will continue with the DHO proceedings . . . whether he obtains favorable information or not from his staff rep. I also explained to him that he is simply trying to prolong this procedure for no apparent reason."

An e-mail submitted by R. Vallapudua, dated April 4, 2014. The e-mail reads, "I visited SIS afer this conversation, there is no video footage for the day of the happening, February 25, 2014. There is a memo dated February 19, 2014 the inmate is referring to on his copout (claims the knife was not his). There is nothing else to report.

An e-mail submitted by J. Ciufo, dated April 2, 2014. The e-mail reads, "Inmate Smith came to see me just now and told me he put the knife inside Chester's mattress. He wants to take responsibility for it."

Request for Staff submitted by inmate Chester to Tyson or DHO.

Inmate History Quarters for inmate Chester.

Inmate History Quarters for inmate Smith.

Memorandum dated February 19, 2014, written by Paul Copenhaven, Warden, USP Atwater.

At the initial investigation you stated, "This is not mine."

At the UDC hearing you stated, "I'm going to take the shot."

The account of the reporting staff member, who documented the inmate's action on an incident report. According to the report, staff became aware of the incident on February 25, 2014, at 7:15 a.m. The incident report reads as follows: "On February 24, 2014, I was conducting a cell search of cell 233 in unit 2B. During this search I located an inmate-made weapon. This weapon was approximately 7" in length, made of metal and sharpened to a point. This weapon was located on the lower bunk, between the mattress and the frame of the bunk. SENTRY records indicate this cell was occupied by 2 inmates: inmate Chester . . . and inmate . . . McGregor . . . . Additionally, both of these inmates were present in the cell immediately prior to this search."

In sum, the DHO relied upon the evidence presented by the account of the reporting employee who became aware of the inmate's misconduct and reported to him. Specifically, on the said date, time, and place in question, when staff conducted [a] search of your assigned cell 223 and discovered a 7" in length homemade metal weapon. The weapon was found on the lower bunk, between the mattress and the frame of the bunk. The DHO noted the contraband was discovered in an area obtainable to you in the event you wished to retrieve it for an illicit purpose. Also,

the DHO directed your attention to constructive possession which states, "All occupants of a room will be held accountable for any contraband discovered in their assigned bed. If any authorized items or 'contraband' are found during any of the searches, they will be confiscated and will be subject to disciplinary action."

Inmate Chester provided no evidence, other than a one page statement claiming the incident report is not true. The DHO finds no evidence, nor did you provide evidence, to indicate the staff member conspired falsely to accuse you of this misconduct. Based on the greater weight of the evidence, and documented evidence, the DHO concludes that Chester did commit the prohibited act of possessing a weapon, code 104, as charged.

Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the movant shows that there is no genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law."[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine [dispute] of material fact and that it is entitled to judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is appropriate by setting forth specific facts showing the existence of a genuine [dispute] concerning every essential component of its case. *Rivera*, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). In prisoner *pro se* cases, courts must be careful to "guard

---

[1] This language reflects the amendments to the Federal Rules of Civil Procedure which came into effect on December 1, 2010. These amendments moved language from Rule 56(c) to Rule 56(a) and changed the Rule to read "genuine dispute as to any material fact," rather than "genuine issue as to any material fact." As the Committee Note to Rule 56 makes clear, the new language "carries forward the summary judgment standard expressed in former subdivision (c)."

against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (quoting *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

Prison inmates who lose previously earned good conduct time credits as a result of prison disciplinary convictions are entitled to the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). As petitioner was deprived of good conduct time credits as a result of the disciplinary conviction being challenged, he was entitled to: (1) written notice of the charges brought against him at least 24 hours before the hearing; (2) a written statement of the fact-finder as to the evidence relied on and the reason for the disciplinary action and (3) the opportunity to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 563-66.

In addition, there must have been "some evidence" to support the petitioner's conviction. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1983). The result of a prison disciplinary proceeding will be overturned by a federal court "only where there is no evidence whatsoever to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

"Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "Federal Courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of 'some facts' or 'any evidence at all.'" *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986) (citation omitted).

*Staff Representative*

Petitioner states that during the UDC hearing, he asked that Ms. Ciufo be appointed as his staff representative. He states she later spoke with him about the incident report. However, he complains that instead of attempting to obtain evidence to support his defense, she secretly started obtaining evidence to use against him. He states that all of the evidence used by the DHO was provided by Ms. Ciufu. He states he later learned that pursuant to prison regulations, Ms. Ciufo should never have been appointed as his staff representative because she helped conduct the UDC hearing.

Petitioner also complains that R. Villapudua, who was subsequently appointed as his staff representative was not present at his hearing before the DHO. He states he requested either a delay or another staff representative, but that these requests were not granted.

Prisoners do not have a right to counsel at prison disciplinary hearings. *Wolff*, 418 U.S. at 570. If there are complex issues involved, or the inmate is illiterate, he should be allowed to seek assistance from another inmate or staff. *Id*.

Petitioner does not contend he is illiterate. Moreover, the issues relating to his disciplinary proceeding were not complex. Petitioner was therefore not entitled to have a staff representative assist him. As a result, petitioner has not alleged a constitutional violation even if is assumed Officer Vallapudua was not present at the disciplinary hearing. Moreover, accepting petitioner's allegations regarding the conduct of Ms. Ciufu as true, petitioner does not assert she provided prison officials with any information petitioner told her in confidence or gathered false information. While petitioner states she spoke with him, he does not identify any information he told her that was not otherwise part of the record. Moreover, petitioner's assertion that Ms. Ciufu acted improperly while she was his staff representative does not entitle him to relief because he did not have a right to a staff representative.

*Witness*

As noted above, an inmate named Smith stated he placed the contraband in petitioner's cell. Petitioner complains that he was denied the opportunity to have inmate Smith testify at the hearing.

Petitioner's assertion is not supported by the record. The record contains a Notice of Discipline Hearing Before the (DHO) that is signed by petitioner. This document states petitioner did not wish to call any witnesses. In addition, the Discipline Hearing Officer Report indicates petitioner did not ask that inmate Smith be called to testify.

However, even if it is assumed petitioner's request to have inmate Smith testify at the hearing was denied, this would not entitle petitioner to relief. A petitioner is entitled to relief with respect to a denial of procedural due process only if the alleged error had a "substantial and injurious effect or influence in determining" the result. *Brecht v. Abrahmson*, 507 U.S. 619, 637-38 (1993); *Fry v. Piller*, 551 U.S. 112, 121-22 (2007) (a federal court must assess the prejudicial impact of an error under the *Brecht* standard in all habeas cases); *White v. Adams*, 405 F. App'x 265, 266 (9th Cir. 2010) (applying the *Brecht* standard to a petition challenging a prison disciplinary conviction).

As indicated above, inmate Smith admitted he placed the weapon in petitioner's cell and that petitioner and his cellmate were not aware of this action. The DHO's report indicates he was aware of inmate Smith's admission. However, the record also reflects inmate Smith was never assigned to petitioner's cell. As the DHO was aware of inmate Smith's admission, and as there was evidence inmate Smith was never assigned to petitioner's cell, it cannot be concluded that the failure to have inmate Smith testify at the hearing had a "substantial and injurious effect or influence in determining" the result of the hearing.

*Evidence*

Petitioner also contends there was insufficient evidence to support his disciplinary convcition. He asserts it was later discovered that the alleged "weapon" was actually a screw. He states there was no makeshift handle and that the object did not appear ready to be used for an illicit

purpose. In addition, petitioner states he should not have been convicted because inmate Smith admitted placing the object in the cell without the knowledge of petitioner or his cellmate.

A photograph of the object found in petitioner's cell was part of the evidence at the hearing. The photograph is Attachment 7 to the motion for summary judgment. The photograph and the description of the object in the charging officer's report constituted some evidence that the object found in petitioner's cell was a weapon.

Moreover, as set forth above, a federal habeas court may not "second guess" credibility determinations of a DHO. The DHO's report establishes the DHO was aware of inmate Smith's statement. However, the DHO determined inmate's Smith statement was not credible. As this court is not empowered to reweigh the evidence, inmate Smith's admission does not mandate the conclusion that there was not sufficient evidence against petitioner.

Petitioner was tried under the theory that he constructively possessed the contraband. A person has constructive possession of a prohibited item if he knowingly has ownership, dominion or control over the contraband or over the premises in which the contraband is located. *United States v. Fambro*, 526 F.3d 836, 2008 WL 1914318 (5th Cir. May 2, 2008). In the prison disciplinary context, constructive possession provides sufficient evidence of guilt if relatively few inmates have access to the area. *McClung v. Hollingsworth*, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007) (contraband found in cell that was the exclusive domain of the petitioner and his cellmate); *Santiago v. Nash*, 224 F. App'x 175, 177 (3rd Cir. 2007) (contraband found taped to inmate's bed was sufficient evidence where only a small number of inmates were potentially guilty of the offense charged); *Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (constructive possession provides some evidence of guilt where only two inmates have access to the contraband). Conversely, constructive possession is not some evidence of guilt if more than a few inmates have access to the contraband. In *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit found that the evidence was insufficient where the contraband was

found in an area of the kitchen where the petitioner worked, but to which 100 other inmates had access.

In this case, the charging officer's report demonstrated the contraband was found in petitioner's cell, a location relatively few inmates would have been able to access. As a result, there was some evidence to support petitioner's conviction under a theory of constructive possession.[2]

## ORDER

For the reasons forth above, there is no genuine dispute of material fact as to whether petitioner's grounds for review are meritorious. It is therefore **ORDERED** that the motion for summary judgment is **GRANTED**. A final judgment shall be entered denying the petition.

So **ORDERED** and **SIGNED** this **27** day of **September, 2017.**

_____
Ron Clark, United States District Judge

---

[2] In his response to the motion for summary judgment, petitioner states the DHO was not impartial based on what petitioner believes are inaccuracies in the DHO's Report and the use of Ms. Ciufo to gather evidence against him. The requirement of impartiality in the context of prison disciplinary hearings requires that the DHO not have participated in the case as an investigating or reviewing officer or as a witness. *Wolff*, 418 U.S. 572 n. 20; *Pedraza v. Meyer*, 919 F.2d 317, 320 (5th Cir. 1990). The record does not reflect that petitioner's DHO was part of the investigation of the disciplinary offense or a witness. Nor is there any indication the DHO behaved in an unprofessional manner, based the finding of guilty on anything other than the evidence presented at the hearing, or bore petitioner any ill-will. As a result, it cannot be concluded the DHO was not impartial.